126 So.2d 100

**W. M. ARANT et ux.**

**v.**

**BOARD OF ADJUSTMENT of the CITY OF MONTGOMERY.**

**3 Div. 797.**

Supreme Court of Alabama.

Nov. 3, 1960.

Rehearing Denied Jan. 26, 1961.

Knabe & Nachman and Ball & Ball, Montgomery, for appellee.

Hill, Robison & Belser, Montgomery, for appellants.

COLEMAN, Justice.

This is an appeal from a judgment of the circuit court which affirmed an order of the

Board of Adjustment granting a variance for the use of a portion of a lot in the city of Montgomery.

William J. Gordy, Jr. applied to the Board of Adjustment for authority to use the west part of the lot in connection with a filling station which applicant proposed to construct on the east portion of the lot. The lot lies at the southeast corner of the intersection of Upper Wetumpka Road and Capitol Parkway. The boundary lines of the lot form a trapezoid. The west side of the trapezoid fronts on Capitol Parkway, is 46 feet long, and is the short parallel side of the figure. The south side is perpendicular, or nearly so, to Capitol Parkway and runs easterly 120 feet. The east side of the lot runs north to Upper Wetumpka Road, is 100 feet long, and is the long parallel side of the trapezoid. The north side of the lot fronts on Upper Wetumpka Road and is 130 feet long. The dimensions here used are not exact but are sufficiently accurate for the understanding of this case. The following sketch may be helpful:

Gordy has contracted to purchase lot ABCDEF which is now owned by the Kysers. As originally platted, lots 8 and 9 were intended to front on Upper Wetumpka Road. Lot 8 is the figure BCDHIJE and Lot 9 is ABEJKGF. As sold off and actu-

ally used, lots 8 and 9 front on Capitol Parkway and now constitute three lots, to wit: ABCDEF owned by the Kysers, DEFGH owned by the appellants, and GHIJK owned by Mrs. Park.

When the zoning ordinance was enacted by the city in 1948, lot 8 of the subdivision was included in the area zoned local business and lot 9 was zoned residential. The result is that the Kyser lot lies in two zones, although there is only one building, a single family residence, on the lot. The area BCDE is zoned local business but the area ABEF is zoned residential. It is this latter area, ABEF, for which the variance is desired.

Gordy proposes to build a gasoline service station on area BCDE. That appears to be permissible because BCDE is already zoned local business. He desires, however, to place concrete on the area ABEF so that vehicles can use ABEF in connection with the service station. The appellants oppose granting the variance.

The area across Upper Wetumpka Road is zoned light industrial and there is a shopping center located there. The area BCXYIJE is zoned local business and there appears to be local business in the area CXYIHD.

On appeal to the circuit court, the appellants demanded a jury trial. The court granted appellee's motion to strike the jury demand and heard testimony ore tenus without a jury. The judgment states that the court has viewed the premises and sets out the following findings:

"* * * From the evidence the court finds that the eastern part of the lot involved was zoned as a local business district which permits the construction and operation of a gasoline service station. The west sixty-five feet of the said lot in question was zoned as 'A-1 residential district' which requires for the construction of a residence seventy-five hundred square feet and a front yard of approximately forty feet and a rear yard of approximately forty-five feet; that the portion of the lot zoned as 'A-1 residential' could not be used for residential purposes without the granting of a variance by the Planning Commission of the City of Montgomery or the Board of Adjustment and that due to the unusual circumstances in connection with the zoning of this property W. J. Gordy, Jr. would suffer an unnecessary hardship if a literal compliance with the zoning ordinance was followed and said W. J. Gordy, Jr. be denied the variance granted by the Board of Adjustment; that the lot is located in a portion of Montgomery largely devoted to industrial and business development and that the granting of the variance would not be contrary to the public interest or the interest of the people in the district in which said lot is situated.

"The court further finds from the evidence that under the conditions and circumstances existing in connection with the property involved in this litigation that the granting of the variance will result in substantial justice in this case and will not be contrary to the public interest."

Appellants argue that because Gordy did not own the property when he applied for the variance, and does not own the property now, he is not a "person aggrieved" within the meaning of that term as it is used in § 781, Title 37, Code 1940. Gordy's petition to the Board of Adjustment alleges that he "has entered into a purchase agreement for the" property. The agreement was admitted in evidence and appears in the transcript. While the sellers are not parties in this case and rights under the contract are not before us, we deem it proper, in deciding the question raised by appellants, to observe that the contract is not a mere option but appears to be an agreement on the part of Gordy to purchase on condition that the variance now sought be granted.

In Slater v. Toohill, 276 App.Div. 850, 93 N.Y.S.2d 153, the court held that the pur-

chaser under an agreement conditioned upon the procurement of the variance may be deemed to be the agent of the owner or an aggrieved person in applying for a variance. In Appeal of Elkins Park Imp. Ass'n, 361 Pa. 322, 64 A.2d 783, 785, the court said, "We regard an equitable owner * * * as possessing a status to petition for a variance * * *." Headnote 4 in that case indicates that the equitable owner was a purchaser under a contract conditioned upon the granting of the variance. In Silverco, Inc. v. Zoning Board of Adjustment, 379 Pa. 497, 109 A.2d 147, 148, the petitioner had contracted to purchase provided the variance was granted and the court said, " * * * Petitioner was consequently a conditional purchaser whose position and rights were equivalent to those of an owner who desired a variance for the same purposes. * * *" In Hickox v. Griffin, 274 App.Div. 792, 79 N.Y.S.2d 193, the court held that a conditional purchaser was entitled to apply for a variance as the agent and with the consent of the holder of the legal title. See also Smith v. Selligman, 270 Ky. 69, 109 S.W.2d 14.

We are of opinion that the above cited cases follow the better rule. To hold that the owner at the time a zoning ordinance is adopted may apply for a variance but cannot transfer or assign that right or appoint an agent to make application to exercise it, tends to make the right depend on the identity of the owner instead of the situation of the property and the facts and circumstances of the case.

There is authority to the contrary. Blumberg v. Feriola, 8 A.D.2d 850, 190 N.Y.S.2d 543; Minney v. City of Azusa, 164 Cal.App.2d 12, 330 P.2d 255; Elwyn v. City of Miami, Fla.App., 113 So.2d 849; Gleason v. Keswick Improvement Ass'n, 197 Md. 46, 78 A.2d 164.

In Arrow Transportation Co. v. Planning & Zoning Commission, Ky., 299 S.W.2d 95, 96, cited by appellants, the court held that the variance or exception allowed by the board in that case " * * * would in effect change the property from a B-3 zone to an M-2 zone. * * *" and that such action was beyond the board's authority. Moreover, the interest of the applicant there was under a lease with an option to purchase. We think the variance there was different from the variance here in that the variance here does not in effect rezone the property, and also that the applicant here under the conditional contract to purchase stands in a position different from that of a mere holder of an option.

■ We are of opinion that the petitioner, Gordy, as equitable owner of the property under a contract to purchase conditioned on the grant of the variance, is entitled to apply for it. The fact that he is such a purchaser is a matter to be considered, but does not bar his right to a variance.

■ Neither do we think that the fact that the Kysers bought the property in 1952 after the zoning ordinance went into effect bars their right to a variance. Their situation is at least as favorable to them as that of a contract purchaser, and, as assignees of whatever right the owner at the time the zoning ordinance was adopted then possessed, the Kysers are not barred, although the fact of purchase subsequent to passage of the ordinance is a material element in determining the existence of unnecessary hardship. Lumund v. Board of Adjustment, 4 N.J. 577, 73 A.2d 545; O'Neill v. Philadelphia Zoning Board of Adjustment, 384 Pa. 379, 120 A.2d 901.

Appellants insist that the judgment is in error because Gordy failed to prove peculiar and exceptional circumstances causing unnecessary hardship or that the spirit of the zoning ordinance will be observed in granting the variance.

On these issues we note that the area on north side of Upper Wetumpka Road is zoned Light Industrial, is occupied by a shopping center and a gasoline service station opposite or nearly opposite ABC DEF; that on the west side of Capitol

Parkway opposite, or nearly opposite, the lot of appellants there is a nonconforming business use; and that the variance does not authorize construction of any building on ABEF but merely authorizes paving it and placing a light on it.

The witness Sellers, who had been in the real estate business ten years, testified that he was interested in the proposed sale of the Kyser property and was familiar with it, that in his opinion there was no practical way to develop the business portion of the Kyser lot without a variance except by constructing on it " *  *  *  a cheap or small service station or drive-in  *  *  *  but the class of structure in operation would be  *  *  *  extremely undesirable  *  *  *," that he would consider such a development " *  *  *  in the sense of a sacrifice of this piece of property  *  *  *," that if the business portion of the lot be developed for business ten or twelve feet of the house would be cut off, and that if the remainder of the house were allowed to stand it would rent for a nominal amount and rental income would be small.

The variance granted is set out in the order of the board as follows:

"After thorough study of this application and taking into consideration all information submitted, the Board of Adjustment herewith grants permission for this service station to be placed as planned, with the understanding that the west part of the lot—that is, the part zoned for residential use, shall be paved but no commercial structure shall be placed thereon. Entrance may be provided across this property from Capitol Parkway. The authority for this *useage* of this property is granted provided a cyclone type fence is placed along the full length of the south property line, with a screening hedge adjacent to the fence. Also, there shall be no outside music or loud music coming from this business establishment. Variance is also granted to permit a controlled floodlight to be placed at the southwest corner of the residential property. No rays of this light to be directed toward residential structures. Variance is herewith granted to permit the pump island to be erected on the business property, to come within 3′ of the west line of the area zoned for business."

The rule as to burden of proof has been expressed as follows:

"A zoning ordinance is presumed to be reasonable and fair in its impact upon the territory encompassed within its terms and the burden falls upon the property owner who seeks relief from the restriction to prove the statutory requisites which justify alleviation.  *  *  *

*  *  *  *  *  *

"The primary responsibility of the applicant is to supply competent and credible evidence to apprise the board of the nature and degree of the zoning burden sought to be alleviated through the variance procedure, and to demonstrate that the contemplated use of the property will not substantially impair the intent and purpose of the zoning plan as a whole nor be inconsistent with any of the purposes of zoning as defined by the Legislature  *  *  *." Tomko v. Vissers, 21 N.J. 226, 121 A.2d 502, 508, 509.

"Section 781, Title 37, Code of 1940, empowers the Board of Adjustment and thus the circuit court, to determine whether in a particular situation the zoning ordinance should be literally applied, and to that end the Board, or if the case has been appealed to the circuit court, the court may make proper adjustment to prevent unnecessary hardship even to the extent of authorizing nonconforming uses. Such variances, however, should be permitted only under peculiar and exceptional circumstances. Nelson v. Donaldson, supra [255 Ala. 76, 50 So.2d 244]." Board of Zoning Adjustment v. Boykin, 265 Ala. 504, 510, 92 So.2d 906, 910.

■ Whether a variance should be granted depends on the facts of each case. City of Miami Beach v. Greater Miami Hebrew Academy, Fla., 108 So.2d 50, and numerous authorities cited in note 75, 101 C.J.S. Zoning § 285, p. 1054.

■ In a situation similar to the instant case, the holding appears to be that the use of land zoned for residence purposes for access to a gasoline filling station did not constitute a violation of the zoning ordinance. Faulkner v. City of Keene, 85 N.H. 147, 155 A. 195. We are not to be understood as holding as a matter of law that such use does not violate the zoning ordinance in the instant case. That question is not before us. We do hold, however, that the facts here support a finding that the variance to permit such use observes the spirit of the zoning ordinance.

We have carefully examined all the evidence offered by both parties. Without undertaking to set out all of it here, we are of opinion that the evidence presented is sufficient to sustain the burden of proof and, under the rules above set out, is sufficient to support a finding that unnecessary hardship will result from literal enforcement of the ordinance and that the variance granted observes the spirit of the ordinance. The assignments of error taking the point that the findings of the court are not supported by the evidence are without merit.

■ Assignments of error 14, 15, and 16 assert that the court erred in admitting in evidence certain drawings and a plot plan of the proposed service station. The only objection argued in brief is that these exhibits are irrelevant on the question of unnecessary hardship. It may be that the documents were not related to the issue of unnecessary hardship. That, however, was not the only issue. Another issue was whether or not the granting of the proposed variance would be in keeping with the spirit of the zoning ordinance. The exhibits tend to show the buildings to be constructed on the lot and the use of it that will result

from granting the variance. They are relevant to the latter issue. In Housing Authority v. Decatur Land Co., 258 Ala. 607, 64 So.2d 594, the court held that map of a proposed replatting of property was admissible to show a plan to make lots more valuable. In Etowah County v. Clubview Heights Company, 267 Ala. 355, 102 So.2d 9, it was held that a map was properly admitted in connection with the testimony of a witness to show the use to which the land could be put. So in the instant case, the exhibits were relevant to show the use to be made if the variance be granted. The objection that the exhibits were irrelevant is not well taken.

When appellants appealed to the circuit court, they demanded a jury trial. Appellee moved to strike the jury demand on the ground that neither § 783, Title 37, Code 1940, nor any other statute, nor the Constitution, provides for or requires a jury trial on such appeal to the circuit court. The court granted the motion to strike and ordered a trial without a jury. This action is assigned as error.

■ If the court erred in striking the demand for jury trial the judgment must be reversed. Nooe's Ex'r v. Garner, 70 Ala. 443, 447; Ex parte Sumlin, 204 Ala. 376, 377, 86 So. 810; King v. Holtam, 219 Ala. 410, 122 So. 405. Whether that action was error depends upon the construction of the statute. As we understand appellants' argument, no issue of constitutional right to a jury trial is presented. The question is: Does the statute provide for jury trial when a party demands it? Section 783, Title 37, Code 1940, recites as follows:

"Any party aggrieved by any final judgment or decision of such board of zoning adjustment, may within fifteen days thereafter appeal therefrom to the circuit court or court of like jurisdiction, by filing with such board a written notice of appeal specifying the judgment or decision from which appeal is taken. In case of such appeal such board shall cause a transcript of the proceedings in the cause to be certified

to the court to which the appeal is taken and the cause in such court be tried de novo."

We will refer to the cases cited by appellee to support the contention that the statute does not provide for a jury in the circuit court.

In re One Chevrolet Automobile, 205 Ala. 337, 87 So. 592, was an action to condemn an automobile under § 13 of the Prohibition Act of 1919, General Acts 1919, pp. 6, 13. The act provided that the proceedings be instituted " * * * in the circuit court by petition in equity * * *." The opinion does not indicate that the appellant even contended that the statute provided for jury trial. His contention was that § 11 of Constitution of 1901 guaranteed a jury. The court held that the constitutional guaranty did not apply.

Miller v. Gaston, 212 Ala. 519, 103 So. 541, was a suit in equity to quiet title to land under the in rem statute. There is no discussion as to whether or not the act provided for a jury trial. It appears to have been conceded that the act did not so provide. The opinion states:

"The principal grounds of demurrer are: (1) That the Grove Act, under which relief is sought, is unconstitutional in that it attempts to confer jurisdiction on courts of equity to try and determine disputed titles to land, without providing for a trial by jury, in violation of section 11 of the Constitution of 1901, which provides that 'the right of trial by jury shall remain inviolate'; * * *." 212 Ala. 519, 521, 103 So. 541, 542.

The court held that because the bill alleged that complainants were in actual, peaceable, possession, it would seem that the bill was well filed as an in personam proceeding, and in that proceeding no right to a jury was guaranteed by the Constitution.

In Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671, the court held that the Constitution did not guarantee a jury trial in disbarment proceedings. The appeal was to review action of the Board of Commissioners of the State Bar before whom the proceedings were had. There appears no suggestion that the statute provided for jury trial.

In Ex parte Homewood Dairy Products Co., 241 Ala. 470, 3 So.2d 58, the court held that § 226, Title 22, Code 1940, does not provide for jury trial in the circuit court on review of an order of the Milk Control Board by certiorari. The statute provides that any person aggrieved by an order of the board may " * * * have such order * * * reviewed by a writ of certiorari by filing in the circuit court * * * a verified petition * * * and such court shall only consider such matters as contained in the petition. Upon such petition being so filed a writ of certiorari shall be issued out of such court * * * requiring said board to file an answer to said petition · * * * and the case considered on said petition, the record of said board, and the answer filed by said board, but no new or additional evidence shall be taken or heard by the court. * * *." The statute there substantially differs from the instant statute, § 783, Title 37, Code 1940, which provides that appeals to the circuit court "be tried de novo."

In Tillery v. Commercial Nat. Bank of Anniston, 241 Ala. 653, 4 So.2d 125, the court held that § 216, Title 61, Code 1940, was not unconstitutional for failing to provide for jury trial in determination of validity of claims against solvent estates. The statute, as it then read, recited that, " * * the judge of the court * * * shall * * hear and pass on the validity of such claim * * *." The statute there considered also differs substantially from the instant statute.

In Campbell v. State, 242 Ala. 215, 5 So. 2d 466, 471, the court affirmed a decree overruling demurrer to bill for injunction to restrain taxpayer from selling personal property at retail until he paid a sales tax assessment. In discussing the contention that because a sales tax assessment " * * is in legal effect a personal judgment, the right to a trial by jury should be granted to

withstand section 11 of the Constitution of Alabama. * * *" the court noted that when appeal from sales tax assessment is taken under § 140, Title 51, the appeal is to the circuit court, in equity, without provision for a jury. It appears that the question there was one of constitutional right, which is not the question in the case at bar. The cases cited by appellee do not persuade us that § 783, Title 37, Code 1940, does not provide for jury trial.

In City of Huntsville v. Pulley, 187 Ala. 367, 65 So. 405, this court stated the rule for construction of statutes with respect to the right to a jury trial on appeal to the circuit court. The sections of the Code of 1907 there considered recite as follows:

"1389. Appeal from assessments provided for.—Any person aggrieved by the decision of the council in making any assessment may, within twenty days thereafter, appeal to the circuit court, or any other court of like jurisdiction, upon executing a bond in double the amount of the probable cost of the appeal."

"1394. Cause may be tried on the record; judgments rendered.—The said cause may be tried on the record without other pleadings, and the court shall hear all the objections of the property owner or owners to said assessment and the amount thereof; and shall determine whether or not such assessment exceeds the increased value of such property by reason of the special benefits derived from the improvement, and shall render judgment accordingly."

The court held that the foregoing Code sections provided for a trial by jury. Cf. §§ 545, 550, Title 37, Code 1940. The court said:

"The word 'court' is often used to designate the head of the tribunal in the person of the presiding judge, as contradistinguished from the jury. Ordinarily, however, it is used to designate the tribunal itself, including its constituent parts of judge and jury,

where it is thus regularly constituted by law. See the definitions collected in 2 Words & Phr. 1678, 1679, and in 11 Cyc. 656, note 10. Whether *is it* used restrictively or generically in any particular instance must be determined upon a consideration of subject-matter, context, and the general policy of the law.

* * * * * *

"Under our judicial polity, the jury is an indispensable constituent of a circuit court, and must try all issues of fact unless dispensed with by the parties litigant, except in appeal cases where the amount involved is less than $20. It has been the clear policy of our people, as exemplified by Constitutions and statutes, to submit all issues of fact in courts of law to the verdict of a jury, even where the Constitution does not so require. And hence, though we might concede the obscurity of the legislative purpose in the statutes under consideration, we think it is a sound rule of construction to hold that when original or appellate jurisdiction of any cause is vested by law in jury courts, and trial by jury is not plainly inhibited, a jury must be impaneled and a verdict rendered thereon, as in ordinary cases, unless a jury trial is waived by the parties. This rule is certainly in accord with the spirit of our laws, and the genius of our government. We therefore hold that the circuit court did not err in submitting this cause to a trial by jury." City of Huntsville v. Pulley, supra, at pages 370, 371, 372, 65 So. at page 406.

In Ex parte City of Florala, 216 Ala. 351, 113 So. 312, 313, the court said: "We reaffirm the Pulley case as still the law." See, also: City of Tuscaloosa v. Hill, 14 Ala.App. 541, 69 So. 486.

It is clear that "trial by jury is not plainly inhibited" by § 783, Title 37, Code 1940. We find nothing in the subject matter, context, or general policy of the law to

prohibit trial of issues of fact by a jury under that statute.

In Ex parte Homewood Dairy Products Co., supra, commenting on City of Huntsville v. Pulley, supra, the court said [241 Ala. 470, 3 So.2d 61]: "* * * on such an appeal whether the trial should be without a jury or with a jury depends upon the issue to be tried. If it is a question of fact, the jury must act as a part of the court, when demanded. * * *"

On the question of allowing or disallowing a variance, there are issues of fact. In Norcross v. Board of Appeal, 255 Mass. 177, 150 N.E. 887, the court reviewed on petition for certiorari, an order of the Board of Appeal of the Building Department of the City of Boston. The board had granted a variance permitting erection of a building to the height of one hundred and fifty-five feet in a district where the height could not exceed one hundred feet under the general provision of the zoning law. The court said that the power to authorize variances is designed to be sparingly exercised, only in exceptional circumstances, and only for relief of specific instances peculiar in their nature; that that power to grant variances does not extend to modification of essential particulars of the scheme of the zoning act or to include changes in boundary lines of districts; that the chief purpose of zoning statutes relates to the public welfare; that protection of health and safety are important factors; and that the preservation of the property of others in the neighborhood is a matter of importance. In concluding that the order granting the variance was not without warrant of law, the court said:

"* * * These and numerous other considerations must be weighed in passing upon any appeal. 'Practical difficulty' or 'unnecessary hardship' as applied to restrictions upon the 'bulk' of buildings to be erected upon land naturally would be measured from the owner's point of view in terms of dollars and cents. Financial considera-

tions alone, however, cannot govern the action of the board. They are bound to take a broader view than the apparent monetary distress of the owner. Otherwise, there would be no occasion for any zoning law. * * * Whether the proposed building will derogate from the intent and purpose of the zoning act is a question which demands insight, vision, wisdom. *It is primarily a question of fact,* although it may become a question of law. The reasons stated on the record in the case at bar, while not overpoweringly convincing, cannot be pronounced erroneous as matter of law. With their soundness in point of fact we have nothing to do. Without commenting further on the reasons stated in the record, it is enough to say that, having regard to the nature of the inquiry open under a petition for the writ of certiorari, we cannot quite say that this action of the board appears on the record to have been without warrant in law." (Emphasis supplied.) [150 N.E. 887, 890, 891.]

In affirming an order granting a variance the Kentucky court said: "* * * Under the circumstances shown, the question of hardship is a question of fact. * * *" Stout v. Jenkins, Ky., 268 S.W.2d 643, 645.

The Appellate Court of Indiana reviewed a judgment which reversed an order of the Board of Zoning Appeals whereby the board had denied a variance. The standards for granting or refusing a variance set out in the opinion are similar to those in our statute, § 781, Title 37, Code 1940. The court said:

"* * * The Board of Zoning Appeals is authorized by statute to grant variances where unnecessary hardships exist and whether or not hardship exists is a question of fact to be determined by the board. * *" Board of Zoning Appeals v. School City of Mishawaka, 127 Ind.App. 683, 145 N.E.2d 302, 305.

271 Ala.—39

**610**

The court held that the evidence sustained the finding that the order denying the variance did not rest on a rational basis. See also City of East Chicago, Ind. v. Sinclair Refining Co., 232 Ind. 295, 111 N.E. 2d 459, 465.

In Nelson v. Donaldson, 255 Ala. 76, 84, 50 So.2d 244, 251, we said:

"* * * Section 781, Title 37, supra, in so far as it relates to *the power of the board* to permit variances from the terms of the zoning ordinance merely delegates the power and authority, coupled with the duty to perform the function of hearing testimony, *to determine if the facts are such as* was intended by the legislature *to entitle the property owner to a variance* from the terms of the zoning ordinance. * *

* * * * * *

"The testimony was taken orally before the trial judge and *his findings on the facts had the effect of a verdict of a jury* * * *." (Emphasis supplied.)

Submission of issues of fact to a jury in zoning cases is not altogether unknown to the law. Barrington v. City of Sherman, Tex.Civ.App., 155 S.W.2d 1008, was a suit to compel issuance of a permit to build a garage. The appellate court held that the trial court erred to reversal in failing to submit to the jury the issue as to whether or not an amendment to the zoning ordinance changing proposed site of the garage from a manufacturing to a residential zone was dictated by public necessity.

One of the propositions of law in appellee's brief recites as follows:

"The testimony was taken orally before the trial judge and his findings on the facts has the. effect of a verdict of a jury, and hence the judgment will not be disturbed unless plainly erroneous."

■ We are of opinion that § 783, Title 37, Code 1940, provides for jury trial

on timely demand of either party. It follows that striking appellants' demand was reversible error.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.